**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

**UNITED STATES** *ex rel.* Patricia Lesko,

*Plaintiffs*,

v.

1. **BENEDICTINE COLLEGE;**
2. **SPALDING UNIVERSITY, INC.;**
3. **GEORGETOWN COLLEGE;**
4. **ASBURY UNIVERSITY;**
5. **LINDSEY WILSON COLLEGE, INC.;**
6. **THOMAS MORE UNIVERSITY, INC.;**
7. **TRANSYLVANIA UNIVERSITY;**
8. **UNIVERSITY OF PIKEVILLE, INC.;**
9. **CENTRE COLLEGE OF KENTUCKY;**
10. **HENRY E. HUNTINGTON LIBRARY AND ART GALLERY;**
11. **LA SIERRA UNIVERSITY;**
12. **DETROIT SYMPHONY ORCHESTRA, INC.;**
13. **DETROIT SYMPHONY ORCHESTRA, INC. (SECOND DRAW);**
14. **INTERLOCHEN CENTER FOR THE ARTS;**
15. **ST. LOUIS ARC, INC.**
16. **WILLIAM WOODS UNIVERSITY**
17. **JEWISH COMMUNITY CENTER**
18. **AVILA UNIVERSITY**
19. **FONTBONNE UNIVERSITY**
20. **WILLIAM JEWELL COLLEGE**
21. **WILLIAM JEWELL COLLEGE (SECOND DRAW)**
22. **RANKEN TECHNICAL COLLEGE**
23. **SAINT LOUIS SYMPHONY ORCHESTRA**
24. **KANSAS CITY ART INSTITUTE**
25. **CENTRAL METHODIST UNIVERSITY**
26. **CATAWBA COLLEGE**
27. **LENOIR-RHYNE UNIVERSITY**

*Defendants*.

**No. 23-11939**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE ON PUBLIC DOCKET**

**JURY TRIAL DEMANDED**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Plaintiff and *qui tam* Relator Patricia Lesko, by and through her undersigned counsel Thomas F. Wieder, alleges of personal knowledge as to her own observations and actions, and on information and belief as to all else, as follows:

## I.
## PRELIMINARY STATEMENT

28. In 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 1102, 134 Stat. 286-294 (2020) (the "CARES Act"), to aid businesses struggling during the COVID-19 pandemic. The CARES Act included the Paycheck Protection Program ("PPP"), which enabled the federal government, through the Small Business Administration ("SBA"), to guarantee emergency loans to small businesses facing pandemic-related difficulties.

29. As of January 8, 2021, the Paycheck Protection Program had in its first round provided "5.2 million loans worth $525 billion to America's small businesses, supporting more than 51 million jobs," according to Treasury Secretary Steven T. Mnuchin.[1]

30. Businesses that exceeded the SBA's established or "alternative" size standards for their industry[2] were not eligible for first-draw PPP loans. Businesses with 500 or more employees were not eligible for first-draw PPP loans, regardless of whether they otherwise met the SBA size standards.

---

[1] Press release, *available at* https://home.treasury.gov/news/press-releases/sm1230 (last accessed April 18, 2023).
[2] For the "established" size standards, *see* https://proxy.www.sba.gov/document/support-table-size-standards (last accessed April 13, 2023); *see also* 13 C.F.R. § 121.201. A business could also qualify for a PPP loan if it met both tests in SBA's "alternative size standard" as of March 27, 2020: (1) a maximum tangible net worth of not more than $15 million; and (2) average net income after federal income taxes (excluding any carry-over losses) for the two full fiscal years before the date of the application of not more than $5 million. *See* Paycheck Protection Program Loans Frequently Asked Questions (FAQs) (as of June 25, 2020), answer to Question 2, *available at* https://www.sba.gov/sites/default/files/2020-06/Paycheck-Protection-Program-Frequently-Asked-Questions%20062520-508.pdf (last accessed April 19, 2023).

31. All Defendants named herein applied for and received first-draw PPP loans. All of these loans which were later forgiven, except for the loan to Defendant Ranken Technical College.

32. Defendants Detroit Symphony Orchestra, Inc. and William Jewel College also received second-draw loans, which were later forgiven.

33. Each Defendant had more than 500 employees *and* exceeded the SBA's size standards for its respective industry, as well as the SBA's "alternative size standards."

34. Each Defendant therefore did not qualify as "a small business concern," and so was not eligible for the PPP loans it received.

35. All Defendants therefore obtained money from the federal government to which they were not entitled, by presenting or causing to be presented false claims to the SBA.

36. Together, the loans to the non-profits named here resulted in payments to these entities of $101,227,958, and payment to the lenders of $103,315,975 million.

37. Relator brings this action on behalf of the United States for Defendants' violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq*. (the "FCA").

38. This Complaint is filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2). A copy of this Complaint, along with written disclosure of substantially all material evidence and information that Relator possesses, was served on the Attorney General of the United States and the United States Attorney for the Eastern District of Michigan, pursuant to 31 U.S.C. § 3730(b)(2).

## II.
## JURISDICTION AND VENUE

39. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, a federal statute.

40. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because at least one Defendant can be found in, and transacts or has transacted business in, this District.

41. This Complaint was filed within the period prescribed by 31 U.S.C. § 3731(b).

## III.
## NO PUBLIC DISCLOSURE; DIRECT AND INDEPENDENT KNOWLEDGE OF VIOLATIONS OF THE FALSE CLAIMS ACT

42. To the best of Relator's knowledge and belief, there has been no public disclosure, relevant under 31 U.S.C. § 3730(e), of the "allegations or transactions" in this Complaint. Relator makes the allegations in this Complaint based on her own direct and independent knowledge, experience and observations.

## IV.
## THE PARTIES

43. Relator brings this action on behalf of Plaintiff the United States. At all times relevant to this Complaint, the United States, through the Small Business Administration, guaranteed the loans provided to Defendants via the PPP. The United States also paid Defendants' lenders to forgive the loans.

44. Relator Patricia Lesko is a resident of the State of Michigan. She is an award-winning independent investigative reporter who has worked to expose fraud and corruption for

over 14 years. In 2021, Relator began investigating aspects of Defendants' business practices. She spent hundreds of hours reviewing thousands of pages of documents.

45. Defendant Benedictine College is a 501(c)(3) not-for-profit organization located in Atchison, Kansas.

46. Defendant Spalding University, Inc. is a 501(c)(3) not-for-profit organization located in Louisville, Kentucky.

47. Defendant Georgetown College is a 501(c)(3) not-for-profit organization located in Georgetown, Kentucky.

48. Defendant Asbury University is a 501(c)(3) not-for-profit organization located in Wilmore, Kentucky.

49. Defendant Lindsey Wilson College, Inc. is a 501(c)(3) not-for-profit organization located in Columbia, Kentucky.

50. Defendant Thomas More University, Inc.is a 501(c)(3) not-for-profit organization located in Crestview Hills, Kentucky.

51. Defendant Transylvania University is a 501(c)(3) not-for-profit organization located in Lexington, Kentucky.

52. Defendant University of Pikeville, Inc. is a 501(c)(3) not-for-profit organization located in Pikeville, Kentucky.

53. Defendant Centre College of Kentucky is a 501(c)(3) not-for-profit organization located in Danville, Kentucky.

54. Defendant Henry E. Huntington Library and Art Gallery is a 501(c)(3) not-for-profit organization located in San Marino, California.

55. Defendant La Sierra University is a 501(c)(3) not-for-profit organization located in Riverside, California.

56. Defendant Detroit Symphony Orchestra, Inc. is a 501(c)(3) not-for-profit organization located in Detroit, Michigan.

57. Defendant Detroit Symphony Orchestra, Inc. (Second Draw) is a 501(c)(3) not-for-profit organization located in Detroit, Michigan.

58. Defendant Interlochen Center for the Arts is a 501(c)(3) not-for-profit organization located in Interlochen, Michigan.

59. Defendant St. Louis Arc, Inc. is a 501(c)(3) not-for-profit organization located in St. Louis, Missouri.

60. William Woods University is a 501(c)(3) not-for-profit organization located in Fulton, Missouri.

61. Jewish Community Center is a 501(c)(3) not-for-profit organization located in St. Louis, Missouri.

62. Avila University is a 501(c)(3) not-for-profit organization located in Kansas City, Missouri.

63. Fontbonne University is a 501(c)(3) not-for-profit organization located in St. Louis, Missouri.

64. William Jewell College is a 501(c)(3) not-for-profit organization located in Liberty, Missouri.

65. William Jewell College is a 501(c)(3) (Second Draw) not-for-profit organization located in Liberty, Missouri.

66. Ranken Technical College is a 501(c)(3) not-for-profit organization located in St. Louis, Missouri.

67. Saint Louis Symphony Orchestra is a 501(c)(3) not-for-profit organization located in St. Louis, Missouri.

68. Kansas City Art Institute is a 501(c)(3) not-for-profit organization located in Kansas City, Missouri.

69. Central Methodist is a 501(c)(3) not-for-profit organization located in Fayette, Missouri.

70. Catawba College is a 501(c)(3) not-for-profit organization located in Salisbury, North Carolina.

71. Lenoir-Rhyne University is a 501(c)(3) not-for-profit organization located in Hickory, North Carolina.

## V. THE LEGAL FRAMEWORK

### A. The CARES Act and the Paycheck Protection Program ("PPP")

72. The CARES Act, *inter alia*, empowered the SBA to guarantee loans made by private lenders to eligible small businesses under the Paycheck Protection Program.

73. The PPP was "designed to provide a direct incentive for small businesses to keep their workers on payroll."[3] PPP loans were intended to be used to help fund payroll costs, including benefits; mortgage interest, rent, and utilities; and certain other costs of business operations.

[3] https://tinyurl.com/PPP-purpose (last accessed Mar. 9, 2023).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

74. Private lenders who were authorized to participate in the PPP processed loan applications and funded approved loans using their own monies, which in turn were 100% guaranteed by the SBA.

75. As pertinent here, a business was eligible to receive a first-draw PPP loan if it:

a. Employed not more than 500 employees;

b. Did not exceed the size standard established for its industry by the SBA;[4] or

c. Met both tests in SBA's "alternative size standard" as of March 27, 2020: (1) a maximum tangible net worth of not more than $15 million; and (2) average net income after federal income taxes (excluding any carry-over losses) for the two full fiscal years before the date of the application of not more than $5 million.

*See* 15 U.S.C. § 636(a)(36)(D); PPP FAQ, answer to Question 5;[5] *id.*, answer to Question 2.

76. As pertinent here, the maximum PPP loan award was the lesser of (a) $10,000,000, or (b) 2.5 times the average payroll costs incurred by the applicant during the 1-year period before the date on which the loan was made, plus any outstanding amount of any Economic Injury Disaster Loan that the borrower was seeking to refinance.[6] *See* 15 U.S.C. § 636(a)(36)(E).

77. "Payroll costs" were defined to include "salary, wage, commission, or similar compensation" for employees residing in the United States. 15 U.S.C. § 636(a)(36)(A)(viii).

78. Borrowers were eligible for full forgiveness of their PPP loans if, during the 8- to 24-week period following loan disbursement: (a) employee and compensation levels were

[4] *See* https://proxy.www.sba.gov/document/support-table-size-standards (last accessed April 13, 2023); *see also* 13 C.F.R. § 121.201.
[5] *Available at* https://www.sba.gov/sites/default/files/2020-06/Paycheck-Protection-Program-Frequently-Asked-Questions%20062520-508.pdf (last accessed April 19, 2023).
[6] The EIDL program provided up to $2 million to small businesses experiencing temporary loss of revenue due to COVID-19. That program is not implicated here.

maintained; and (b) loan proceeds were spent on payroll costs and other eligible expenses; with (c) at least 60% of the loan proceeds being spent on payroll costs.[7]

### B. PPP Loan Certifications

79. To receive a PPP loan, a borrower was required to first complete the Borrower Application Form (the "Application").[8]

80. The Application required the borrower to certify, *inter alia*, that it was "eligible to receive a loan" under the PPP, and that it would use loan proceeds consistent with the PPP rules in effect at the time of application. *Id*., at 2.

81. Applicants were also required to initial the following statements:

> The funds will be used to retain workers and maintain payroll [or other authorized purposes] as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.
>
> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

*Id*.

82. The PPP required borrowers to submit Applications to private commercial lenders for processing and funding. Data from the Application, including information about the

---

7 *See* https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-loan-forgiveness (last accessed Mar. 9, 2023).

8 *Available at* https://www.sba.gov/document/sba-form-2483-ppp-first-draw-borrower-application-form (last accessed Mar. 9, 2023). The Borrower Application Form went through at least ten iterations. The quoted passages are consistent from the first version (June 12, 2020) to the last (March 18, 2021).

borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lenders to the SBA in the course of processing the loans.

83. According to SBA guidance:

> Providing an accurate calculation of payroll costs is the responsibility of the borrower, and the borrower attests to the accuracy of those calculations on the Borrower Application Form (SBA Form 2483 or SBA Form 2483-C for First Draw PPP Loans and SBA Form 2483-SD or SBA Form 2483-SD-C for Second Draw PPP Loans). Lenders are expected to perform a good faith review, in a reasonable time, of the borrower's calculations and supporting documents concerning average monthly payroll cost. For example, minimal review of calculations based on a payroll report by a recognized third-party payroll processor would be reasonable. In addition, as the PPP Interim Final Rules indicate, lenders may rely on borrower representations, including with respect to amounts required to be excluded from payroll costs.

*See* PPP FAQ, Question 1.

## C. The False Claims Act

84. The FCA, 31 U.S.C. §§ 3729 *et seq.*, establishes liability for any "person" (natural or corporate) who, *inter alia*:

a. "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(l)(A); or

b. "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(l)(B).

85. "Knowing" is defined by the FCA to include "deliberate ignorance of the truth" or "reckless disregard of the truth." *Id*. § 3729(b)(1).

86. The FCA defines "claim" to include any request for money that:

> is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—
>
> (I) provides or has provided any portion of the money or property requested or demanded; or
>
> (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded….

*Id*. § 3729(b)(2)(A)(ii).

87. For each false claim or other FCA violation, the statute provides for the assessment of treble damages, plus a civil penalty. *Id*. § 3729(a)(1)(G).[9]

88. The FCA also contains a *qui tam* mechanism and provides for payment of a percentage of the United States' recovery to the *qui tam* relator, as well as "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs," in the event of a settlement or a successful trial. *Id.* § 3730(b), (d). "All [such] expenses, fees, and costs must be awarded against the defendant." *Id.*, subsection (d).

## VI.
## FACTUAL ALLEGATIONS

89. Defendants fraudulently applied for and obtained PPP loans, as follows:

90. **Benedictine College**

a. Benedictine College is a non-profit organization located in Atchison, Kansas.

b. Benedictine College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Benedictine College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of Benedictine College's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2019, Benedictine College reported gross receipts of more than $84.1 million.

ii. On that same Form 990, Benedictine College reported 1290 employees in calendar year 2019 – 790 more than the PPP maximum of 500.

[9] 31 U.S.C. § 3729(a)(1) provides for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461. The minimum per-claim penalty is currently $13,508 and the maximum is $27,018. *See* 88 Fed. Reg. 5776, 5776-81 (Jan. 30, 2023).

iii. On that same Form 990, Benedictine College reported net assets of more than $86.1 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Benedictine College obtained a PPP loan for $3,649,900, approved on April 8, 2020. The loan has been forgiven.

e. On its 2020 PPP application, Benedictine College claimed it would use the loan to retain 376 jobs.

91. **Spalding University, Inc.**

a. Spalding University, Inc. is a non-profit organization located in Louisville, Kentucky.

b. Spalding University, Inc.'s NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Spalding University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of Spalding University, Inc.'s PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Spalding University, Inc. reported gross receipts of more than $43 million.

ii. On that same Form 990, Spalding University, Inc. reported 773 employees in calendar year 2019 – 273 more than the PPP maximum of 500.

iii. On that same Form 990, Spalding University reported net assets of more than $64.9 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Spalding University, Inc. obtained a PPP loan for $4,619,700, approved on April 13, 2020. The loan has been forgiven.

e. On its 2020 PPP application, Spalding University, Inc. claimed it would use the loan to retain 410 jobs.

92. **Georgetown College**

a. Georgetown College is a non-profit organization located in Georgetown, Kentucky.

b. Georgetown College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Georgetown College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of Georgetown College's PPP loan application. On its IRS Form 990 for the fiscal year ending December 2019, Georgetown College reported gross receipts of more than $57 million.

ii. On that same Form 990, Georgetown College reported 926 employees in calendar year 2019 – 426 more than the PPP maximum of 500.

iii. On that same Form 990, Georgetown College reported net assets of more than $43 million, in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Georgetown College obtained a PPP loan for $2,800,000, approved on May 11, 2020. The loan has been forgiven.

e. On its PPP application, Georgetown College claimed it would use the loan to retain 447 jobs.

93. **Asbury University**

a. Asbury University is a non-profit organization located in Wilmore, Kentucky.

b. Asbury University's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Asbury University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of Asbury University's PPP loan application. On its IRS Form 990 for the period ending September 2021, Asbury University reported gross receipts of more than $57.8 million.

ii. On that same Form 990, Asbury University reported 1366 employees for calendar year 2020 – 866 more than the PPP maximum of 500.

iii. On that same Form 990, Asbury University reported net assets of more than $127.8 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Asbury University obtained a PPP loan for $4,448,000, approved on April 8, 2020. The loan has been forgiven.

e. On its PPP application, Asbury University falsely certified that the loan would be used to retain 476 jobs.

94. **Lindsey Wilson College, Inc.**

a. Lindsey Wilson College, Inc. is a non-profit organization located in Columbia, Kentucky.

b. Lindsey Wilson College, Inc.'s NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Lindsey Wilson College, Inc. did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of Lindsey Wilson College, Inc.'s PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Lindsey Wilson College, Inc. reported gross receipts of more than $66.5 million.

ii. On that same Form 990, Lindsey Wilson College, Inc. reported 1,123 employees for calendar year 2019 – 623 more than the PPP maximum of 500.

iii. On that same Form 990, Lindsey Wilson College, Inc. reported net assets of more than $59.2 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Lindsey Wilson College, Inc. obtained a PPP loan for $4,201,600. The loan was approved on April 14, 2020, and has been forgiven.

e. On its PPP application, Lindsey Wilson College, Inc. falsely certified that the loan would be used to retain 459 jobs.

95. **Thomas More University, Inc.**

a. Thomas More University, Inc. is a non-profit organization located in Crestview Hills, Kentucky.

b. Thomas More University, Inc.'s NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Thomas More University, Inc. did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of Thomas More University, Inc. PPP loan application. On its IRS Form 990 for the period ending June 2021, Thomas More University, Inc. reported gross receipts of more than $54.6 million.

ii. On that same Form 990, Thomas More University, Inc. reported 854 employees in calendar year 2020 – 354 more than the PPP maximum of 500.

iii. On that same Form 990, Thomas More University, Inc. reported net assets of more than $38 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Thomas More University, Inc. obtained a PPP loan for $2,700,000, approved on April 8, 2020. The loan has been forgiven.

e. On its PPP application, Thomas More University, Inc. falsely certified that the loan would be used to retain 445 jobs.

96. **TRANSYLVANIA UNIVERSITY**

a. Transylvania University is a non-profit organization located in Lexington, Kentucky.

b. Transylvania University's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Transylvania University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of Transylvania University's PPP loan application. On its IRS Form 990 for the period ending June 2021, Transylvania University reported gross receipts of more than $63 million.

ii. On that same Form 990, Transylvania University reported 1,162 employees in calendar year 2019 – 662 more than the PPP maximum of 500.

iii. On that same Form 990, Transylvania University reported net assets of more than $170 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Transylvania University obtained a PPP loan for $3,987,100 on April 3, 2020. The loan has been forgiven.

e. On its PPP application, Transylvania University falsely certified that the loan would be used to retain 250 jobs.

97. **University of Pikeville, Inc.**

a. The University of Pikeville, Inc. is a non-profit organization located in Pikeville, Kentucky.

b. The University of Pikeville, Inc.'s NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. The University of Pikeville, Inc. did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of the University of Pikeville, Inc.'s PPP loan application. On its IRS Form 990 for the period ending June 2020, the University of Pikeville, Inc. reported gross receipts of more than $66.1 million.

ii. On that same Form 990 the University of Pikeville, Inc. reported 979 employees in calendar year 2019 – 479 more than the PPP maximum of 500.

iii. On that same Form 990 the University of Pikeville, Inc. reported net assets of more than $52.4 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. The University of Pikeville, Inc. obtained a PPP loan for $4,772,000, approved on April 27, 2020. The loan has been forgiven.

e. On its PPP application, the University of Pikeville, Inc. falsely certified that the loan would be used to retain 433 jobs.

98. **Centre College of Kentucky**

a. Center College of Kentucky is a non-profit organization located in Danville, Kentucky.

b. Center College of Kentucky's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Center College of Kentucky did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of the Center College of Kentucky's PPP loan application. On its IRS Form 990 for the period ending June 2020, Center College of Kentucky reported gross receipts of more than $103.9 million.

ii. On that same Form 990, Center College of Kentucky reported 1465 employees – 965 more than the PPP maximum of 500.

iii. On that same Form 990, Center College of Kentucky reported net assets of more than $378.2 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Center College of Kentucky obtained a PPP loan for $5,154,500, approved on April 10, 2020. The loan has been forgiven.

e. On its PPP application, Center College of Kentucky falsely certified that the loan would be used to retain 470 jobs.

99. **Henry E. Huntington Library and Art Gallery**

a. Henry E. Huntington Library and Art Gallery is a non-profit organization located in San Marino, California.

b. Henry E. Huntington Library and Art Gallery's NAICS code is 72110 (Museums).

c. The Henry E. Huntington Library and Art Gallery did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of the Henry E. Huntington Library and Art Gallery's PPP loan application. On its IRS Form 990 for the period ending June 2020, the Henry E. Huntington Library and Art Gallery reported gross receipts of more than $74.3 million.

ii. On that same Form 990, the Henry E. Huntington Library and Art Gallery reported 556 employees – 56 more than the PPP maximum of 500.

iii. On that same Form 990, the Henry E. Huntington Library and Art Gallery reported net assets of more than $713.2 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. The Henry E. Huntington Library and Art Gallery obtained a PPP loan for $5,767,239, approved on April 9, 2020. The loan has been forgiven.

e. On its PPP application, the Henry E. Huntington Library and Art Gallery falsely certified that the loan would be used to retain 487 jobs.

100. **La Sierra University**

a. La Sierra University is a non-profit organization located in Riverside, California.

b. La Sierra University's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. La Sierra University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of North La Sierra University's PPP loan application. On its IRS Form 990 for the fiscal year ending December 2020, La Sierra University reported gross receipts of more than $82.2 million.

ii. On that same Form 990, La Sierra University reported 1519 employees in calendar year 2020 – 1019 more than the PPP maximum of 500.

iii. On that same Form 990, La Sierra University reported net assets of more than $160.3 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. La Sierra University obtained a PPP loan for $5,642,900, approved on August 7, 2020. The loan has been forgiven.

e. On its PPP application, La Sierra University falsely certified that the loan would be used to retain 308 jobs.

101. **Detroit Symphony Orchestra, Inc.**

a. The Detroit Symphony Orchestra, Inc. is a non-profit organization located in Detroit, Michigan.

b. The Detroit Symphony Orchestra, Inc.'s NAICS code is 711130 (Musical Groups and Artists).

c. The Detroit Symphony Orchestra, Inc. did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $15 million at the time of the Detroit Symphony Orchestra, Inc.'s PPP loan application. On its IRS Form 990 for the fiscal year ending July 2020, the Detroit Symphony Orchestra, Inc. reported gross receipts of more than $40.9 million.

ii. On that same Form 990, the Detroit Symphony Orchestra, Inc. reported 645 employees in calendar year 2019 – 145 more than the PPP maximum of 500.

iii. On that same Form 990, the Detroit Symphony Orchestra, Inc. reported net assets of more than $82.6 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. The Detroit Symphony Orchestra, Inc. obtained a PPP loan for $4,012,772, approved on April 11, 2020. The loan has been forgiven.

e. On its PPP application, the Detroit Symphony Orchestra, Inc. falsely certified that the loan would be used to retain 214 jobs.

102. **Detroit Symphony Orchestra, Inc. (Second Draw)**

a. The Detroit Symphony Orchestra, Inc. is a non-profit organization located in Detroit, Michigan.

b. The Detroit Symphony Orchestra, Inc.'s NAICS code is 711130 (Musical Groups and Artists).

c. The Detroit Symphony Orchestra, Inc. did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $15 million at the time of the Detroit Symphony Orchestra, Inc.'s PPP loan application. On its IRS Form 990 for the fiscal year ending July 2020, the Detroit Symphony Orchestra, Inc. reported gross receipts of more than $29.8 million.

ii. On that same Form 990, the Detroit Symphony Orchestra, Inc. reported 633 employees in calendar year 2019 – 133 more than the PPP maximum of 500.

iii. On that same Form 990, the Detroit Symphony Orchestra, Inc. reported net assets of more than $81.4 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. The Detroit Symphony Orchestra, Inc. obtained a PPP loan for $2,000,000, approved on March 27, 2021. The loan has been forgiven.

f. On its PPP application, the Detroit Symphony Orchestra, Inc. falsely certified that the loan would be used to retain 214 jobs.

103. **Interlochen Center for the Arts**

a. Interlochen Center for the Arts is a non-profit organization located in Interlochen, Michigan.

b. Interlochen Center for the Arts's NAICS code is 611610 (Fine Arts Schools).

c. Interlochen Center for the Arts did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $8 million at the time of Interlochen Center for the Arts's PPP loan application. On its IRS Form 990 for the fiscal year ending April 2020, Interlochen Center for the Arts reported gross receipts of more than $74.8 million.

ii. On that same Form 990, Interlochen Center for the Arts reported 1,536 employees in calendar year 2019 – 1,036 more than the PPP maximum of 500.

iii. On that same Form 990, Interlochen Center for the Arts reported net assets of more than $177.4 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Interlochen Center for the Arts obtained a PPP loan for $5,990,150, approved on April 8, 2020. The loan has been forgiven.

e. On its PPP application, Interlochen Center for the Arts falsely certified that the loan would be used to retain 488 jobs.

104. **St. Louis Arc, Inc.**

a. St. Louis Arc, Inc. is a non-profit organization located in St. Louis, Missouri.

b. St. Louis Arc, Inc.'s NAICS code is 624120 (Services for the Elderly and Persons with Disabilities).

c. St. Louis Arc, Inc. did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $12 million at the time of St. Louis Arc, Inc.'s PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, St. Louis Arc, Inc. reported gross receipts of more than $25.3 million.

ii. On that same Form 990, St. Louis Arc, Inc. reported 732 employees in calendar year 2019 – 232 more than the PPP maximum of 500.

iii. On that same Form 990, St. Louis Arc, Inc. reported net assets of more than $17.2 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. St. Louis Arc, Inc. obtained a PPP loan for $3,498,005, approved on April 9, 2020. The loan has been forgiven.

e. On its PPP application, St. Louis Arc, Inc. falsely certified that the loan would be used to retain 486 jobs.

105. **William Woods University**

a. William Woods University is a non-profit organization located in Fulton, Missouri.

b. William Woods University's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. William Woods University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

   i. The size standard for its NAICS code was $30 million at the time of the William Woods University's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, William Woods University reported gross receipts of more than $36.9 million.

   ii. On that same Form 990, William Woods University reported 876 employees in calendar year 2019 – 376 more than the PPP maximum of 500.

   iii. On that same Form 990, William Woods University reported net assets of more than $44.4 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. William Woods University obtained a PPP loan for $2,829,100, approved on April 3, 2020. The loan has been forgiven.

e. On its PPP application, William Woods University falsely certified that the loan would be used to retain 250 jobs.

106. **Jewish Community Center**

a. Jewish Community Center is a non-profit organization located in St. Louis, Missouri.

b. Jewish Community Center's NAICS code is 813410 (Civic and Social Organizations).

c. Jewish Community Center did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

   i. The size standard for its NAICS code was $8 million at the time of Jewish Community Center's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Jewish Community Center reported gross receipts of more than $22.9 million.

   ii. On that same Form 990, Jewish Community Center reported 1099 employees – 599 more than the PPP maximum of 500.

   iii. On that same Form 990, Jewish Community Center reported net assets of more than $67.8 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Jewish Community Center obtained a PPP loan for $2,357,100, approved on April 9, 2020. The loan has been forgiven.

e. On its PPP application, Jewish Community Center falsely certified that the loan would be used to retain 490 jobs.

107. **Avila University**

a. Avila University is a non-profit organization located in Kansas City, Missouri.

b. Avila University's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Avila University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of Avila University's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Avila University reported gross receipts of more than $34.9 million.

ii. On that same Form 990, the Avila University reported 835 employees in calendar year 2019 – 335 more than the PPP maximum of 500.

iii. On that same Form 990, the Avila University reported net assets of more than $32.3 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Avila University obtained a PPP loan for $3,003,000, approved on April 7, 2020. The loan has been forgiven.

e. On its PPP application, Avila University falsely certified that the loan would be used to retain 335 jobs.

108. **Fontbonne University**

a. Fontbonne University is a non-profit organization located in St. Louis, Missouri.

b. Fontbonne University's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Fontbonne University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time Fontbonne University's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Fontbonne University reported gross receipts of more than $35.9 million.

ii. On that same Form 990, Fontbonne University reported 809 employees in calendar year 2019 – 309 more than the PPP maximum of 500.

iii. On that same Form 990, Fontbonne University reported net assets of more than $30.1 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

f. Fontbonne University obtained a PPP loan for $3,205,695 approved on April 8, 2020. The loan has been forgiven.

g. On its PPP application, Fontbonne University falsely certified that the loan would be used to retain 400 jobs.

109. **William Jewel College**

a. William Jewel College is a non-profit organization located in Liberty, Missouri.

b. William Jewel College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. William Jewel College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of William Jewel College's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2019, William Jewel College reported gross receipts of more than $58.1 million.

ii. On that same Form 990, William Jewel College reported 825 employees in calendar year 2019 – 325 more than the PPP maximum of 500.

iii. On that same Form 990, William Jewel College reported net assets of more than $116.3 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. William Jewel College obtained a PPP loan for $3,270,500, approved on April 7, 2020. The loan has been forgiven.

e. On its PPP application, William Jewel College falsely certified that the loan would be used to retain 451 jobs.

110. **William Jewel College (Second Draw)**

f. William Jewel College is a non-profit organization located in Liberty, Missouri.

g. William Jewel College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

h. William Jewel College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of William Jewel College's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2019, William Jewel College reported gross receipts of more than $58.1 million.

ii. On that same Form 990, William Jewel College reported 825 employees in calendar year 2019 – 325 more than the PPP maximum of 500.

iii. On that same Form 990, William Jewel College reported net assets of more than $116.3 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

i. William Jewel College obtained a PPP loan for $1,950,000, approved on May 14, 2021. The loan has been forgiven.

j. On its PPP application, William Jewel College falsely certified that the loan would be used to retain 297 jobs.

111. **Ranken Technical College**

a. Ranken Technical College is a non-profit organization located in St. Louis, Missouri.

b. Ranken Technical College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Ranken Technical College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of Ranken Technical College's PPP loan application. On its IRS Form 990 for the fiscal year ending September 2020, Ranken Technical College reported gross receipts of more than $36.9 million.

ii. On that same Form 990, Ranken Technical College reported 536 employees in calendar year 2019 – 36 more than the PPP maximum of 500.

iii. On that same Form 990, Ranken Technical College reported net assets of more than $100.6 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Ranken Technical College obtained a PPP loan for $3,656,900, approved April 8, 2020. The loan has not been forgiven.

e. On its PPP application, Ranken Technical College falsely certified that the loan would be used to retain 330 jobs.

112. **St. Louis Symphony Orchestra**

a. St. Louis Symphony Orchestra is a non-profit organization located in St. Louis, Missouri

b. St. Louis Symphony Orchestra's NAICS code is 711130 (Musical Groups and Artists).

c. St. Louis Symphony Orchestra did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $12 million at the time of St. Louis Symphony Orchestra's PPP loan application. On its IRS Form 990 for the fiscal year ending December 2020, Advance Care Alliance of New York reported gross receipts of more than $39.1 million.

ii. On that same Form 990, St. Louis Symphony Orchestra reported 528 employees in calendar year 2020 – 28 more than the PPP maximum of 500.

iii. On that same Form 990, St. Louis Symphony Orchestra reported net assets of more than $37.3 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. St. Louis Symphony Orchestra obtained a PPP loan for $3,637,200, approved on April 8, 2020. The loan has been forgiven.

e. On its PPP application, St. Louis Symphony Orchestra falsely certified that the loan would be used to retain 83 jobs.

113. **Kansas City Art Institute**

a. Kansas City Art Institute is a non-profit organization located in Kansas City, Missouri.

b. Kansas City Art Institute's NAICS code is 611710 (Educational Support Services).

c. Kansas City Art Institute did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $16.5 million at the time of Kansas City Art Institute's PPP loan application. On its IRS Form 990 for the fiscal year ending December 2019, Kansas City Art Institute reported gross receipts of more than $38.1 million.

ii. On that same Form 990, Kansas City Art Institute reported 719 employees in calendar year 2019 – 219 more than the PPP maximum of 500.

iii. On that same Form 990, Kansas City Art Institute reported net assets of more than $129 million, in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Kansas City Art Institute obtained a PPP loan for $2,500,000, approved August 10, 2020.

e. On its PPP application, the Kansas City Art Institute falsely certified that the loan would be used to retain 418 jobs.

114. **Central Methodist University**

a. Central Methodist University is a non-profit organization located in Fayette, Missouri.

b. Central Methodist University's NAICS code is 611310 (Colleges, Universities, and Professional Schools).

c. Central Methodist University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of Central Methodist University's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Central Methodist University reported gross receipts of more than $54.6 million.

ii. On that same Form 990, Central Methodist University reported 1,093 employees – 593 more than the PPP maximum of 500.

iii. On that same Form 990, Central Methodist University reported net assets of more than $120.8 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Central Methodist University obtained a PPP loan for $3,825,000, approved on April 7, 2020. The loan has been forgiven.

e. On its PPP application, Central Methodist University falsely certified that the loan would be used to retain 424 jobs.

115. **Catawba College**

a. Catawba College is a non-profit organization located in Salisbury, North Carolina.

b. Catawba College's NAICS code is 611310 (Colleges, Universities, and Professional Schools).

c. Catawba College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632.

i. The size standard for its NAICS code was $30 million at the time of Catawba College's PPP loan application. On its IRS Form 990 for the fiscal year ending August 2021, Catawba College reported gross receipts of more than $75.9 million.

ii. On that same Form 990, Catawba College reported 811 employees in calendar year 2020 – 311 more than the PPP maximum of 500.

iii. On that same Form 990, Catawba College reported net assets of more than $138.9 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Catawba College obtained a PPP loan for $2,650,000, approved on May 8, 2020. The loan has been forgiven.

e. On its PPP application, Catawba College falsely certified that the loan would be used to retain 435 jobs.

116. **Lenoir-Rhyne University**

a. Lenoir-Rhyne University is a non-profit organization located in Hickory, North Carolina.

b. Lenoir-Rhyne University's NAICS code is 712110 (Museums).

c. Lenoir-Rhyne University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

i. The size standard for its NAICS code was $30 million at the time of Lenoir-Rhyne University's PPP loan application. On its IRS Form 990 for the fiscal year ending December 2020, Lenoir-Rhyne University reported gross receipts of more than $101.6 million.

ii. On that same Form 990, Lenoir-Rhyne University reported 1325 employees – 825 more than the PPP maximum of 500.

iii. On that same Form 990, Lenoir-Rhyne University reported net assets of more than $167.9 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Lenoir-Rhyne University obtained a PPP loan for $5,099,597, approved on May 11, 2020. The loan has been forgiven.

e. On its PPP application, Lenoir-Rhyne University falsely certified that the loan would be used to retain 400 jobs.

## COUNT I
## VIOLATION OF THE FALSE CLAIMS ACT:
## PRESENTATION OF FALSE CLAIMS

117. Relator repeats and realleges each of the preceding paragraphs as if fully set forth herein.

118. As explained in those paragraphs, Defendants knowingly presented or caused to be presented false claims in the form of PPP loan applications and requests for forgiveness.

119. All Defendants falsified their headcounts to stay under the PPP limit of 500, when in fact their headcounts exceeded 500 – making them ineligible to receive a PPP loan.

120. All Defendants knew or should have known that they were ineligible for a PPP loan, because their revenues exceeded the size standards for their NAICS codes, meaning they were not "small business concerns" as defined in section 3 of the Small Business Act, 15 U.S.C. § 632, and so were ineligible for PPP loans.

121. All Defendants knew or should have known they were ineligible for a PPP loan because their assets exceeded the SBA's "alternative size standard."

122. All Defendants' PPP loan applications were also legally false because they contained or incorporated false certifications as to their truthfulness, accuracy, and compliance with all applicable laws, regulations, and program instructions for payment.

123. The misrepresentations were material to decisions by Defendants' lenders to fund the PPP loans and by the SBA to approve and forgive those loans. Defendants' lenders would not have funded the loans, and the SBA would not have approved or forgiven the loans, had they known of the falsity of the applications.

124. The loans were made to advance the government's interest in supporting small businesses during the COVID-19 pandemic, and Defendants' lenders were paid for the loans,

with interest. Defendants' loan and forgiveness applications were therefore claims on the government for purposes of the FCA.

125. Accordingly, Defendants' knowing presentations of false or fraudulent loan applications to their lenders were violations of 31 U.S.C. § 3729(a)(l)(A).

126. By virtue of the false and fraudulent claims that Defendants presented or caused to be presented, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages, plus civil penalties of not less than $13,508 and up to $27,018 for each violation.

**COUNT II**
**VIOLATION OF THE FALSE CLAIMS ACT:**
**MAKING OR USING FALSE RECORD OR STATEMENT**

127. Relator repeats and realleges each of the preceding paragraphs as if fully set forth herein.

128. As explained in those paragraphs, Defendants knowingly made, used, or caused to be made or used, false records or statements material to the false or fraudulent PPP loan applications at issue, in violation of 31 U.S.C. § 3729(a)(1)(B).

129. The false records or statements include the fraudulent PPP loan and forgiveness applications that Defendants submitted.

130. The making and use of these false records and statements were material to decisions by Defendants' lenders to fund the PPP loans and by the SBA to approve and forgive the loans. The lenders would not have funded the loans, and the SBA would not have approved or forgiven the loans, had they known of the falsity of the records and statements.

131. The loans were made to advance the government's interest in supporting small businesses during the COVID-19 pandemic, and Defendants' lenders were paid for the loans,

with interest. Defendants' loan and forgiveness applications were therefore claims on the government for purposes of the FCA.

132. Accordingly, Defendants' making and use of false or fraudulent records and statements were violations of 31 U.S.C. § 3729(a)(l)(B).

133. By virtue of Defendants' making and use of these false or fraudulent records and statements, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages, plus civil penalties of not less than $13,508 and up to $27,018 for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator respectfully requests that this Court enter judgment in her favor and that of the United States and against Defendants, granting the following on all Counts:

A. Judgment against each Defendant and in favor of the United States, in an amount equal to the damages the United States has sustained due to each Defendant's actions, trebled, plus a civil penalty for each violation of 31 U.S.C. § 3729(a)(l)(A) and (B), pursuant to 31 U.S.C. § 3729(a), as adjusted by operation of the federal Civil Penalties Inflation Adjustment Act of 1990;

B. The maximum award to Relator allowed, along with her attorney fees and expenses and other costs of this action, pursuant to 31 U.S.C. § 3730(d); and

C. Awards to the United States and Relator for pre- and post-judgment interest at the rates permitted by law; and

D. Such other and further relief as this Court may deem to be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands trial by jury on all questions of fact raised by the Complaint.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Dated: August 7, 2023

Respectfully submitted,

*/s/ Thomas F. Wieder*
Thomas F. Wieder (P33228)
2445 Newport Rd.
Ann Arbor, MI 48103
(734) 994-6647 (phone)
(734) 994-6647 (fax)
*wiedert@aol.com*

*Attorney for Relator Patricia Lesko*